Amir Shlesinger (SBN 204132)
ashlesinger@crowell.com
Kelsey A. Hill (SBN 329496)
khill@crowell.com
Carol Lewis (SBN 130188)
clewis@crowell.com
CROWELL & MORING LLP
515 South Flower Street, 41st Floor
Los Angeles, CA 90071
Telephone: 213.622.4750
Facsimile: 213.622.2690

*Attorneys for Defendant,*
Health Care Service Corporation, erroneously sued as HCSC Insurance Services Company

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

| | |
|---|---|
| AESTHETICARE MEDICAL CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>HCSC INSURANCE SERVICES COMPANY; and INTERCOOL USA, LLC,<br><br>Defendants. | Case No.<br><br>[Removal from the Superior Court of California, County of Orange, Case No. 30-2026-01596257-SC-CJC]<br><br>**DEFENDANT HEALTH CARE SERVICE CORPORATION'S NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. § 1331 (FEDERAL QUESTION)**<br><br>Compl. Filed: September 9, 2026<br><br>[*Filed concurrently with Declaration of Jo McMillin*] |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND TO PLAINTIFF:**

**PLEASE TAKE NOTICE** that Defendant Health Care Service Corporation, a Mutual Legal Reserve Company, operating in Texas as Blue Cross and Blue Shield Texas ("BCBSTX"), erroneously sued as "HCSC Insurance Services Company dba Blue Cross Blue Shield of Texas," hereby removes the above-entitled civil action from the Superior Court of California, County of Orange, to the United States District Court for the Central District of California – Southern Division pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. Removal is proper because this Court has federal question jurisdiction given that the causes of action at issue are completely preempted by § 502(a) of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA").

In support of this Notice of Removal, BCBSTX states as follows:

## I. FACTUAL AND PROCEDURAL BACKGROUND

1. On September 9, 2026, Plaintiff Aestheticare Medical Corporation ("Plaintiff") filed a Claim and Order to Go to Small Claims Court (hereafter referred to as the "Complaint" or "Claim and Order") against BCBSTX and InterCool USA, LLC ("InterCool") in the Superior Court of California, County of Orange, in the Small Claims division, captioned *Aestheticare Medical Corporation v. HCSC Insurance Services Company*, Case No. 30-2026-01596257-SC-CJC (the "State Court Action"). A readiness hearing for the Small Claims trial is scheduled for November 12, 2026. Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the Claim and Order, along with a copy of all process, pleadings, papers, and publicly-available documents filed in the State Court Action, is attached hereto as **Exhibit A**.[1]

2. That same day, on September 9, 2026, Plaintiff submitted a Certified Mail Statement with the Small Claims Court, requesting that the clerk serve the

[1] The documents filed on the Small Claims Docket are not available electronically. To the extent a particular document has been served or otherwise provided to BCBSTX, it is included here as part of **Exhibit A**.

Complaint on BCBSTX via certified mail. *See* **Exhibit B**, Copy of the Small Claims Docket in the State Court Action, pp. 1-2.

3. On September 15, 2026, a copy of the Claim and Order was served on BCBSTX via certified mail. *See* **Exhibit A**, Notice of Service of Process.

4. BCBSTX is unaware whether InterCool, the other named defendant in the Claim and Order, has been served in the State Court Action.

5. The Complaint is premised on an alleged "unpaid medical insurance claim for surgery center facility charges" related to medical treatment that Dr. Ronald Moser rendered on June 6, 2024. *See* **Exhibit A**, Claim and Order, p. 3.

6. Based on the Complaint, Plaintiff has requested a judgment against BCBSTX for $6,250 based on BCBSTX's purportedly improper benefits determination and failure to process and pay benefits for the patient at issue (referred to herein as "Patient G.V."). *See id.* at p. 2.

7. As established herein, during the relevant time period, Patient G.V. had health insurance coverage under an employee welfare benefit plan subject to ERISA, which was administered by BCBSTX (hereafter referred to as "the Plan"). *See* Declaration of Jo McMillin ("McMillin Decl."), ¶¶ 3-5.

8. As set forth more fully below, the State Court Action is properly removed to this Court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446 because the Central District of California has subject matter jurisdiction over this action and BCBSTX has met all the procedural requirements for removal.

9. In filing this Notice of Removal, BCBSTX is not waiving any motions, objections, or defenses available under state or federal law, including, but not limited to, lack of personal jurisdiction, improper venue, insufficient process, insufficient service of process, failure to join, and/or misjoinder. Further, BCBSTX expressly reserves the right to amend or supplement this Notice of Removal.

## II. REMOVAL IS PROPER BECAUSE THIS COURT HAS FEDERAL QUESTION JURISDICTION

10. As set forth herein, BCBSTX is removing the State Court Action to federal court because the entire Complaint is premised on healthcare benefits provided under an employee welfare benefit plan that is governed by ERISA, and thus, is preempted by ERISA — which is a federal law. The United States District Court for the Central District of California therefore has original jurisdiction over Plaintiff's claim under 28 U.S.C. § 1331, in that this Court has federal question jurisdiction and BCBSTX may remove the matter to this Court under 28 U.S.C. § 1441.

11. Federal question jurisdiction is present when a state-law claim is completely preempted by § 502 of ERISA. *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 209 (2004) ("*Davila*"). Under § 502(a) of ERISA, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy" is completely preempted because such cause of action "conflicts with the clear congressional intent to make the ERISA remedy exclusive." *Id.* Put another way, if a plaintiff, at some point in time, could have brought the claim under § 502(a)(1)(B) of ERISA, "and where there is no other independent legal duty that is implicated by a defendant's actions," then the claim is completely preempted. *Id.* at 210.

12. As a result, complete preemption under § 502(a) of ERISA is "an exception . . . to the well-pleaded complaint rule," and a case may be removed to federal court when a plaintiff has asserted a state-law cause of action concerning an ERISA-governed plan that is preempted by ERISA and falls within the scope of ERISA's civil enforcement provision, even though the complaint on its face does not assert a cause of action under federal law. *See id.* at 207-08; *Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson*, 201 F.3d 1212, 1215-16 (9th Cir. 1999).

### A. Plaintiff's Claim Is Premised Upon an Employee Welfare Benefit Plan Governed by ERISA

13. ERISA's provisions apply to any "employee benefit plan" that is "established or maintained . . . by an employer engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C. § 1003(a)(1). An "employee benefit plan" is defined as "an employee welfare benefit plan" [*id.* § 1002(3)], which in turn, is defined as "any plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment" [*id.* § 1002(1)].

14. Patient G.V. has health insurance coverage under a benefit plan sponsored and maintained by InterCool, which had contracted with BCBSTX to provide health insurance coverage and administer the healthcare benefits of the Plan for eligible employees and their dependents. *See* McMillin Decl., ¶¶ 4-6; *see also id.* at ¶ 3, **Exhibit C** (Certificate of Coverage), pp. 2, 12, 14-18.

15. As evidenced by the Certificate of Coverage ("COC") for the Plan at issue, InterCool established the Plan with the intent to provide, and for the purpose of providing, health insurance coverage as a benefit of employment at InterCool. *See* McMillin Decl., ¶ 3, **Exhibit C**, p. 12 (explaining that the Plan "is offered by your Employer as one of the benefits of your employment").

16. Accordingly, the coverage and eligibility provisions in the COC make clear that the Plan at issue is, in fact, an "employee welfare benefit plan" governed by ERISA within the meaning of 29 U.S.C. § 1002(1). *See* McMillin Decl., ¶ 5.

### B. Patient G.V.'s Plan Does Not Meet the "Safe Harbor" Criteria for Excluding the Plan from ERISA's Employee Welfare Benefit Plan Regulations

17. Separately, the Plan does not meet the Department of Labor's so-called "safe harbor" provision. Under the "safe harbor" provision, an employee welfare

benefit plan is excluded from ERISA's coverage requirements if all four of the following criteria are met: (1) no contributions are made by the employer; (2) participation in the benefit plan is completely voluntary for employees; (3) the employer's role with respect to the plan is, "without endorsing the program," limited to publicizing the plan to employees, collecting premiums, and remitting premiums to the insurer; and (4) the employer received no profit in connection with the plan. 29 C.F.R. § 2510.3-1(j); *see also Qualls v. Blue Cross of Cal., Inc.*, 22 F.3d 839, 843 (9th Cir. 1994) (explaining that all four criteria in the regulation must be met for the exemption to apply; if not, "the employer's involvement in a group insurance plan is significant enough to constitute an 'employee benefit plan' subject to ERISA").

18. Here, the Plan does not meet each requirement outlined above for excluding the Plan from ERISA's coverage requirements, and thus, is subject to ERISA. Preliminarily, contributions are made by InterCool as set forth in the Plan, and therefore, the Plan does not meet the first requirement. *See* McMillin Decl., ¶ 3, **Exhibit C**, p. 2 (explaining that an eligible employee and their dependent "shall have coverage under the Plan, beginning on the Effective Date shown on the Identification Card, if the Employer makes timely payment of total premium due to" BCBSTX).

19. In addition, based on the COC, InterCool's role is not limited to publicizing the existence of the Plan or collecting and remitting payment to BCBSTX as required to satisfy the third requirement. InterCool is the sponsor who has control of the Plan, while BCBSTX is the claims administrator for the Plan who is responsible for administering and making coverage and benefit determinations based on the terms set forth in the Plan. *See* McMillin Decl., ¶¶ 4-6; *see also id.* at ¶ 3, **Exhibit C**, p. 119 (explaining that InterCool "has given BCBSTX the authority and discretion to interpret" the Plan and "to make eligibility and benefit determinations").

20. Indeed, InterCool has determined the plan participation requirements and coverage options for employees, including requiring termination of coverage

under the Plan following employment and specifying the applicable enrollment period. *See* McMillin Decl., ¶ 3, **Exhibit C**, pp. 14-18 (providing information regarding an employee's participation and enrollment in the Plan, including InterCool's open enrollment period), p. 115 (explaining that coverage will automatically end when an employee does not "satisfy the definition of an Employee" as defined in the COC, such as due to termination of employment). Further, InterCool has explicitly retained the right to amend or terminate the Plan, or otherwise diminish or eliminate the healthcare benefits provided under the Plan, at any time without its employees' consent. *See id.* at pp. 106, 115.

21. These are only a handful of InterCool's administrative functions, but they are sufficient to demonstrate that its role is separate and apart from merely advertising the Plan or collecting and remitting payment. *See, e.g.*, *Sarraf v. Standard Ins. Co.*, 102 F.3d 991, 994 (9th Cir. 1996) (finding that an employer who performed "an array of functions" in administering the plan, actively endorsed the plan, and encouraged employees to enroll fell outside the safe harbor exemption); *Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 930 (7th Cir. 2018) (holding that the third element of the safe harbor exemption is not met where employer performed other functions, including administrative functions associated with maintenance of the plan).

22. Further, the COC has several references to ERISA, including with respect to rights and protections under ERISA for an employee as a participant in the Plan. *See* McMillin Decl., ¶ 3, **Exhibit C**, pp. 35-38; *see also Stuart v. UNUM Life Ins. Co. of Am.*, 217 F.3d 1145, 1154 (9th Cir. 2000) (holding that specific reference in the policy to ERISA is additional evidence that the employer intended to create an ERISA-governed plan); *Kanne v. Conn. Gen. Life Ins. Co.*, 867 F.2d 489, 493 (9th Cir. 1988) (holding that the plan fell outside the safe harbor exemption because the benefit booklet expressly described "the plan as an ERISA plan," and therefore, the administrator did more than "merely advertise the group insurance" but rather

"endorsed" the plan within the meaning of the regulation).

23. Accordingly, Patient G.V.'s Plan is not exempt from ERISA as the Plan does not satisfy each requirement of the Department of Labor's safe harbor provision. *See, e.g., Alloco v. Metro. Life Ins. Co.*, 256 F. Supp. 2d 1023, 1028-29 (D. Ariz. 2003) (finding that the plan fell "outside the scope of the safe harbor" where the employer's participation in administrating the plan was "material" and included designating eligible employees and filing required paperwork with the Department of Labor); *Crabtree v. Life Care Ctrs. of Am., Inc.*, No. 1:08-cv-444-SEB-TAB, 2009 U.S. Dist. LEXIS 25454, at *18 (S.D. Ind. Mar. 18, 2009) (finding that the plan did not "qualify for ERISA's safe harbor protection," in part, because the employer "determined the eligibility requirement for its employees," which included termination following the conclusion of its employees' employment).

**C. Plaintiff's Claim Is Completely Preempted by ERISA**

24. In *Davila*, the Supreme Court held that certain state-law causes of action are completely preempted by ERISA's statutory scheme. *See Davila*, 542 U.S. at 209-10; *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009) (explaining that ERISA can confer "exclusive federal jurisdiction" because "Congress intended the scope of [the] federal law to be so broad as to entirely replace any state-law claim").

25. The Supreme Court articulated a two-prong test in *Davila* to determine whether a state law claim is completely preempted by § 502(a) of ERISA. Under the two-prong test, a claim is subject to complete preemption under ERISA when (1) a plaintiff could have brought the claim under § 502(a)(1)(B) of ERISA and (2) "there is no other independent legal duty that is implicated by a defendant's actions." *Davila*, 542 U.S. at 210; *Fossen v. Blue Cross and Blue Shield of Mont., Inc.*, 660 F.3d 1102, 1107-08 (9th Cir. 2011). Here, Plaintiff's claim against BCBSTX is completely preempted by ERISA because each *Davila* prong is met.

26. The first *Davila* prong is met because Plaintiff could have brought the

Complaint under § 502(a)(1)(B) of ERISA. *See* 29 U.S.C. § 1132(a)(1)(B) (providing that a civil action may be brought "by a participant or beneficiary . . . to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."); *Lodi Mem'l Hosp. Ass'n v. Tiger Lines, LLC,* No. 2:15-cv-00319-MCE-KJN, 2015 U.S. Dist. LEXIS 110495, at *10 (E.D. Cal. Aug. 20, 2015) (explaining that where a state-law claim is seeking the same relief available under 29 U.S.C. § 1132(a)(1)(B), "it must be pursued as a federal claim under ERISA").

27. Generally, a medical provider with an assignment from an ERISA participant or beneficiary has standing to sue under ERISA. *See Misic v. Building Service Employees Health and Welfare Trust*, 789 F.2d 1374, 1377-79 (9th Cir. 1986) (concluding that "ERISA does not forbid assignment by a beneficiary of his right to reimbursement under a health care plan to the health care provider"); *see also Brown v. BlueCross BlueShield of Tennessee, Inc.*, 827 F.3d 543, 547 (6th Cir. 2016) (finding "a broad consensus" that when a patient has assigned payment of benefits to a provider, the provider has "standing to sue for that payment under ERISA § 502(a)"); *Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 529 n.3 (5th Cir. 2009) ("A healthcare provider suing on the basis of assignment of ERISA rights, benefits or claims for a plan member must proceed under the procedures established by § 502(a), as the provider is seeking to enforce the terms of the plan.").

28. Here, Patient G.V. is a participant of the Plan, which as established in Section II.A., *supra*, is an employee welfare benefit plan governed by ERISA. To the extent that Patient G.V. allegedly assigned her right to reimbursement to Plaintiff, Plaintiff is permitted to submit a claim for benefits on her behalf and pursue payment directly from BCBSTX to recover the "unpaid medical insurance claim for surgery center facility charges" as an assignee of benefits under the Plan. *See* **Exhibit A**, Claim and Order, p. 3.

29. Further, while the Complaint does not expressly identify any specific

cause of action, the Complaint is premised on BCBSTX's purported shortcomings in handling Patient G.V.'s claim for benefits, including BCBSTX's alleged failure to properly process and pay benefits under the Plan. *See* **Exhibit A**, Claim and Order, pp. 2-3. Undoubtedly, such a claim must arise out of, and necessarily depend upon, Patient G.V.'s and BCBSTX's rights and obligations under the Plan, which as demonstrated above, is an employee welfare benefit plan. Accordingly, because Plaintiff is seeking a remedy in connection with BCBSTX's adjudication and payment of healthcare benefits under the Plan for Patient G.V.'s medical care and treatment, Plaintiff could (and should) have filed this action in federal court under ERISA.

30. The second *Davila* prong is also met because the Complaint does not implicate a legal duty that is *independent* of either ERISA or the Plan. *Davila*, 542 U.S. at 210.

31. Importantly, the entire Complaint is squarely premised on BCBSTX's purportedly wrongful denial and refusal to reimburse for a surgery center facility claim for Patient G.V. *See* **Exhibit A**, Claim and Order, pp. 2-3.

32. Accordingly, Plaintiff's claim for damages alleged in the Complaint does not implicate or involve any independent legal duty imposed on BCBSTX. Rather, Plaintiff's claim is plainly based on BCBSTX's denial of benefits stemming from Patient G.V.'s ERISA-governed Plan, and therefore, necessarily hinges on an interpretation of the Plan to resolve BCBSTX's liability. Indeed, the Complaint is premised on an "unpaid medical insurance claim." *See id.* at p. 3. To determine whether the facility services were covered or payable, and at what rate, a review of the provisions for coverage laid out in the Plan is required. Thus, because Plaintiff's claim is challenging the "right to payment" under the Plan, it is completely preempted by ERISA. *See Roessert v. Health Net*, 929 F. Supp. 343, 351 (N.D. Cal. 1996) (explaining that "complete preemption is required where a state law claim cannot be resolved without an interpretation of the contract governed by federal law," and

therefore, "the appropriate inquiry is whether the claim 'rests upon the terms of the plan' or requires construction of plan language") (internal quotations and citations omitted).

33. In the decision of *Pilot Life Insurance Company v. Dedeaux*, 481 U.S. 41 (1987), the Supreme Court held that § 502(a)(1)(B) of ERISA is "the exclusive vehicle" for resolution of a suit by an ERISA plan participant or beneficiary "to recover benefits from a covered plan." 481 U.S. at 53. Accordingly, any state-law claim seeking to provide an additional or different remedy in connection with a benefit determination is completely preempted. *Mass Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985). Based on that general rule, the Supreme Court and Ninth Circuit have consistently held that state-law causes of action, which relate to the denial of benefits or a breach of duty under an ERISA-governed plan are preempted by ERISA. *See, e.g., Pilot Life,* 481 U.S. at 55-57 (finding that breach of fiduciary duty, fraud, and bad faith claims based on improper processing of a claim for benefits were completely preempted by § 502(a) of ERISA); *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1226-27 (9th Cir. 2005) (finding that a state-law claim for violation of Cal. Bus. & Prof. Code § 17200 is completely preempted by ERISA because "the factual basis of the complaint . . . was the denial of reimbursement" under an ERISA plan); *Tingey v. Pixley-Richards West, Inc.*, 953 F.2d 1124, 1133 (9th Cir. 1992) (holding that a claim for breach of the duty of good faith and fair dealing should be dismissed pursuant to ERISA); *Olson v. Gen. Dynamics Corp.*, 960 F.2d 1418, 1422-23 (9th Cir. 1991) (holding that ERISA preempted a common law fraud claim based on misrepresentation); *Kanne,* 867 F.2d at 494 (finding that breach of contract and bad faith claims against insurer were preempted).

34. Here, any alleged liability on the part of BCBSTX must depend entirely on whether any healthcare benefits were due to Patient G.V. under the Plan. Because the Complaint does not implicate any independent legal duty imposed on BCBSTX, Plaintiff's only recourse for the relief sought in the State Court Action arise

exclusively under ERISA. As such, Plaintiff's claim for damages in the Complaint is more properly characterized as a "denial of benefits" claim under § 502(a) of ERISA and is therefore completely preempted by ERISA.

35. Therefore, this Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1441 and this action is removable to federal court because Plaintiff's damages claim against BCBSTX is completely preempted by ERISA.

## III. BCBSTX HAS MET THE PROCEDURAL REQUIREMENTS FOR REMOVAL

### A. Timely Removal

36. As explained in more detail in Section I, *supra*, BCBSTX was served with the Claim and Order on September 15, 2026, triggering the thirty-day time limit for removal under 28 U.S.C. § 1446(b)(1). *See* **Exhibit A**, Notice of Service of Process; *see also* 28 U.S.C. § 1446(b)(1) (providing that notice of removal must be filed "within thirty days after the receipt by defendant, through service or otherwise, of a copy of the initial pleading . . . or within thirty days after the service of summons . . . whichever period is shorter"); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999) (interpreting receipt "through service or otherwise" to mean formal service because only formal service can bring the defendant "under a court's authority" and obligate the defendant to engage in litigation).

37. BCBSTX filed this Notice of Removal on October 15, 2026, which is within thirty (30) days of service of the Claim and Order. Accordingly, this Notice of Removal is timely filed.

### B. Proper Venue

38. Pursuant to 28 U.S.C. § 1446(a), this Notice of Removal is properly filed in the United States District Court for the Central District of California.

39. Plaintiff originally filed the State Court Action in the Superior Court of California, County of Orange, which is located within the Central District of

California – Southern Division. *See* 28 U.S.C. § 84(c)(3) (providing that the Southern Division of the Central District of California is comprised of Orange County). Therefore, the United States District Court for the Central District of California – Southern Division is the proper venue to where this action should be assigned because it is "the district and division embracing the place where such action is pending." *See id.* § 1441(a).

**C. Compliance With Additional Procedural Requirements for Removal**

40. BCBSTX has fully complied with the procedural requirements for removal set forth in 28 U.S.C. § 1446(a).

41. In accordance with 28 U.S.C. § 1446(a), BCBSTX has filed a true and correct copy of all process, pleadings, and papers on file in the State Court Action with this Notice of Removal. *See* ¶ 1, *supra*, and **Exhibit A**. On information and belief, no other related process, pleadings, or papers have been served upon BCBSTX or filed on the Small Claims Docket.

42. Pursuant to 28 U.S.C. § 1446(d), BCBSTX will provide this Notice of Removal to Plaintiff, and will promptly file a copy of this Notice of Removal in the Superior Court of California, County of Orange, before which the State Court Action is pending.

43. To BCBSTX's knowledge, InterCool has not yet been served as there is no Proof of Service, or similar information such as a signed return postal receipt, filed on the Small Claims Docket showing that InterCool has been properly served with the Claim and Order.

44. As InterCool has not yet been served, BCBSTX need not obtain its consent as to removal. *See* 28 U.S.C. § 1446(b)(2) (providing that when a civil action "is removed solely under Section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action").

45. BCBSTX is contemporaneously filing a Civil Cover Sheet pursuant to

Local Rule 3-1. *See* C.D. Cal. L.R. 3-1 (requiring that every complaint or other document presented to the clerk for filing "must be accompanied by a Civil Cover Sheet (Form CV-071) completed and signed by the attorney or party presenting the matter").

46. No previous request has been made for the relief requested herein.

47. Therefore, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, and this action is properly removed pursuant to 28 U.S.C. §§ 1441 and 1446.

## IV. CONCLUSION

**WHEREFORE,** BCBSTX hereby gives notice that this action is removed from the Superior Court of California, County of Orange, to the United States District Court for the Central District of California, and respectfully requests that this Court exercise jurisdiction over this action and grant any relief as deemed just and proper.

DATED: October 15, 2026

**CROWELL & MORING LLP**

By: */s/ Carol Lewis*
Amir Shlesinger
Kelsey A. Hill
Carol Lewis

*Attorneys for Defendant,*
Health Care Service Corporation, erroneously sued as HCSC Insurance Services Company